## In re Adoption of Cherish Miranda Youpee

*Donald B. Swope,* for petitioners and natural mother.
*William C. Anderson,* for natural father.
*Katherine E. Hotzinger Conner,* for the child.
*Robert McAnally,* for the Fort Peck Indian Tribe.

MILLER, *J.,* May 3, 1991—This matter is before the court on petition filed by Luther and Phyllis

72

Clemons for the adoption of Cherish Miranda You-pee. Motions to transfer jurisdiction to the Fort Peck Tribal Court, Assiniboine and Sioux Tribe, Fork Peck Indian Reservation, pursuant to 25 U.S.C.S. §1911(b), have been filed by Fort Peck Indian Tribes and Marvin K. Youpee, natural father of Cherish Miranda Youpee. Objections to the motion to transfer have been filed by Cynthia Youpee, natural mother of Cherish Miranda Youpee.

Cherish Miranda Youpee, Caucasian/Indian, was born on January 6, 1986, on the reservation in Poplar, Montana, to Cynthia Marie Youpee, Caucasian/Indian, hereafter called "mother," and Marvin Kurt Youpee, Indian, hereafter called "father," five months following their divorce.

The Fort Peck Tribal Court, by order dated August 21, 1985, which order dissolved the marriage of mother and father, granted custody rights of the then-unborn child equally to mother and father. At the time of birth, the parents agreed that the mother, Cynthia Marie Youpee, would have custody of Cherish. Cherish was subsequently enrolled with the Fort Peck Assiniboine and Sioux Tribe by her father, a member of the same tribe. Shortly following the divorce in July 1986, father moved from the reservation. During August 1986, Cynthia Marie Youpee, mother, moved from the reservation to reside with her mother and stepfather, Phyllis and Luther Clemons, in Florida. On August 29, 1986, she voluntarily consented to the adoption of Cherish by her mother and stepfather.

Luther and Phyllis Clemons filed a petition for the adoption of Cherish in York County, Pennsylvania. The hearing was scheduled for October 11, 1988. Although father reaffirmed his agreement to termi-nate his parental rights on August 23,1988, through his attorney he contested the jurisdiction of Penn-

sylvania state courts. At the request of petitioners, the matter was continued generally.

The Fort Peck Indian Tribe filed a motion to transfer jurisdiction on February 13, 1990, and father, on May 11, 1990, filed a similar motion. Subsequent hearings to finalize the adoption were continued. Mother opposes the transfer of the proceedings to Fort Peck Tribal Court.

We grant the motion to transfer the proceedings to Fort Peck Tribal Court pursuant to 25 U.S.C.S. §1911.

Cherish Miranda Youpee is an Indian child as the term is used in the jurisdiction section, section 1911. The Indian Child Welfare Act definitional section, section 1903(4), includes Cherish, who was enrolled within the tribe as an Indian child. The jurisdiction section, section 1911, contains two provisions. Section 1911(a) applies to domiciliaries and wards and reads as follows:

"An Indian tribe shall have jurisdiction exclusive as to any state over any child custody proceeding involving an Indian child who resides or is domiciled within the reservation of such tribe, except where such jurisdiction is otherwise vested in the state by existing federal law. Where an Indian child is a ward of a tribal court, the Indian tribe shall retain exclusive jurisdiction notwithstanding the residence or domicile of the child."

Section 1911(b) applies to non-domiciliaries and reads as follows:

"In any state court proceeding for the foster care placement of, or termination of parental rights to, an Indian child not domiciled or residing within the reservation of the Indian child's tribe, the court, in the absence of good cause to the contrary, shall transfer such proceeding to the jurisdiction of the tribe, absent objection by either parent, upon the

petition of either parent, or the Indian custodian or the Indian child's tribe; provided, that such transfer shall be subject to declination by the tribal court of such tribe."

Under this section, the state court is required to transfer child custody proceedings of non-domiciliary Indian children to the tribal court absent good-cause objection by either parent. *Mississippi Choctaw v. Holyfield,* 490 U.S. 30, 104 L.Ed. 2d 29, 109 S.Ct. 1597 (1989). Under subsection (b) the court must evaluate the objections of mother and determine whether there is good cause not to transfer the proceedings to the tribal court.

Mother makes three arguments. First, she contends that the current action is an internal dispute to which ICWA does not apply. Therefore, the Pennsylvania state court could assert jurisdiction. Applying the Uniform Child Custody Act, she argues that Pennsylvania is the preferred forum because there were more substantial contacts, the child has resided in Pennsylvania since August 1989, and experts who would testify in the case are located here. Second, she argues that if section 1911(b) controls, the state court should retain jurisdiction. Assuming that the court retains jurisdiction placement with the child's maternal grandmother and stepgrandfather, part of the extended family, is authorized by section 1915(a)(1). Third, she argues that if section 1911(a) controls, the Indian tribal court could not assert jurisdiction because the child is not a domiciliary of the reservation; relying on the federal definition of domicile under *Mississippi Choctaw v. Holyfield, supra.*

We hold that mother has failed to establish a good-cause objection to the transfer of jurisdiction under section 1911(b).

Her first objection is that the ICWA does not apply. Contrary to this allegation, under section 1903(l)(iv), Congress clearly applies the ICWA to child custody proceedings which include the adoptive placement of an Indian child. This section defines adoptive placement to include the permanent placement or final decree of adoption. The current proceeding falls within section 1903(1)(iv) since it concerns the permanent placement of an Indian child by way of adoption.

The second objection of mother argues that the state court should retain jurisdiction under section 1911(b). The court is required to transfer the proceedings of non-domiciliary Indian children to the tribal court under section 1911(b) absent good-cause objection. It was Congress' intent to prefer the tribal court as the forum for child care custody proceedings. *Mississippi Choctaw,* 104 L.Ed.2d at 49. The tribal court has significant interests in this proceeding. The ICWA was enacted to protect the interests of the Indian tribe, family, and children from actions by non-tribal courts which have often resulted in the breakup of Indian families. Section 1901(4). The Congressional findings under section 1901(5) determined that this result was often caused by the failure of state courts and administrative agencies to recognize essential tribal relations of Indian people and culture. *Mississippi Choctaw,* 104 L.Ed.2d at 38. Although the state court has concurrent jurisdiction under section 1911(b), the ICWA preferred forum for child custody proceedings of non-domiciliary Indian children is the tribal court. *Mississippi Choctaw,* 104 L.Ed.2d at 49. We hold that the preferred forum for the proceeding is the tribal court, which Congress has decreed can more adequately determine what is in the best interest of the child.

The third objection by mother is that the tribal court does not have exclusive jurisdiction under section 1911(a). The jurisdictional provision of section 1911 creates a dual system under subsection (a) and (b). While subsection (a) applies to domiciliaries, subsection (b) applies to non-domiciliaries. Mother argues that Cherish should not be considered a domiciliary. In *Mississippi Choctaw v. Holyfield, supra,* the federal definition of "domiciliary" was stated by the U.S. Supreme Court as requiring the domicile of a minor child to be determined by the origin of birth. Mother argues that due to her voluntary consent to the adoption by her mother and stepfather, their domicile of Pennsylvania should be used to determine the domicile of the child. Father and the Fort Peck Indian Tribe argue that the domicile of the mother at the birth, the reservation, should be used to determine the domicile of the child.

We are satisfied that the mother's domicile was on the reservation at the time of the child's birth, and that the child for all of the reasons herein stated acquired that domicile at birth. No new domicile has been acquired by the child, even though she has not lived on the reservation since she was a small child.

Having concluded that the mother's domicile at the time of the birth was the reservation, the child is a domiciliary and jurisdiction would be in the tribal court under subsection (a). This is consistent with Congress' intent to prefer the tribal court as the forum to litigate child custody and adoption proceedings.

We note further that the Fort Peck Tribal Court has exercised jurisdiction over the custody of this child in its order of August 25, 1985. While this has not been raised by either party, we believe that it

further reinforces our finding that jurisdiction lies with the tribal court.

We are not insensitive to the heartaches that might be visited upon the child and the adoptive parents by the transfer of jurisdiction. This court is not permitted, however, to substitute its judgment for the clear mandate of the Congress of the United States and to disregard the holdings of the Supreme Court of the United States. We are satisfied that the provisions of the Indian Child Welfare Act, as interpreted by the United States Supreme Court in *Mississippi Choctaw v. Holyfield, supra,* require that jurisdiction be transferred. Accordingly we enter the following

## ORDER

And now, May 3, 1991, the motions for transfer of jurisdiction by Fort Peck Tribe and Marvin Kurt Youpee to Fort Peck Tribal Court, Assiniboine and Sioux Tribe, Fort Peck Indian Reservation, are granted. This order is made under authority mandated by the Indian Child Welfare Act, 25 U.S.C.S. §1911(b).